IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLA WAGNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OLYMPUS AMERICA, INC., et al. | : | NO.  15-6246 |
| | : | |

**MEMORANDUM**

**Padova, J.**                                                                            **May 24, 2016**

Plaintiff Carla Wagner has brought this action against Defendants Olympus America, Inc. ("OAI"), Olympus Medical Systems Corporation ("OMSC"), Olympus Corporation of Americas ("OCA"), and Custom Ultrasonics, Inc. alleging various products liability claims, negligence, fraud, and wrongful death.  OAI filed a Motion to Transfer the case to the United States District Court for the Western District of North Carolina, pursuant to 28 U.S.C. § 1404.[1]  For the following reasons, the Motion is granted.

**I.     BACKGROUND**

The First Amended Complaint ("FAC") alleges the following facts.  On November 24, 2013, Willie Warner, Plaintiff's husband, died from an antibiotic-resistant bacterial infection contracted during a routine procedure called an Endoscopic Retrograde Cholangiopancreatogram ("ERCP").  (FAC ¶ 2.)  The procedure was performed on January 11, 2013, at the Carolinas Medical Center in Charlotte, North Carolina.  (Id.)  During Mr. Warner's ERCP, a medical device called a duodenoscope was inserted down his throat.  (Id.)  The duodenoscope used was the Olympus TJF – Q180V (the "Olympus 180"), which was manufactured by OAI, OCA, and

---

[1] OAI originally moved either to transfer under 28 U.S.C. § 1404 or to dismiss for forum non conveniens.  However, OAI subsequently clarified that it now solely seeks transfer pursuant to 28 U.S.C. § 1404(a).  (OAI Reply Br. at 2 n.1.)

OMSC ("Olympus Defendants").  (Id.)  When the duodenoscope was used on Mr. Warner, it was contaminated with deadly "superbug" bacteria known as Carbapenem-resistent Enterobacteriaceae ("CRE").  (Id. ¶ 3.)  Mr. Warner contracted an infection from this bacteria and suffered from the infection for eight months before ultimately succumbing.  (Id. ¶¶ 3, 7.)  During this time, he experienced excruciating pain, lost 60 pounds, was repeatedly hospitalized, required a feeding tube, required external wound drainage, and experienced delirium and oxygen deprivation.  (Id.)  In addition, he was isolated from friends and family because of the highly contagious nature of the infection.  (Id.)  Mr. Warner died at the age of 55.  (Id.)

Plaintiff sued OAI as the party "responsible for advertising, promoting, marketing, and distributing" Olympus medical devices, including the device used on Mr. Warner, in the United States.  (Id. ¶ 11.)  OAI serves as the "domestic nerve center" for Olympus medical devices in the United States and is responsible for all decisions involving the "domestic sale, distribution, advertising, promotion, and/or marketing of the Olympus 180 duodenoscope."  (Id. ¶ 18.)  OAI is organized under the laws of the State of New York and has its principal place of business in Center Valley, Pennsylvania.  (Id. ¶ 10.)

Plaintiff also named OCA as a defendant, as OCA is the regional headquarters for Olympus and is responsible for all pharmacovigilance, including coordinating post-marketing safety surveillance, monitoring adverse event reporting, and addressing doctor and patient complaints.  (Id. ¶¶ 13-14.)  OAI is a wholly owned subsidiary of OCA, and together, OCA and OAI "handle all domestic public relations, regulatory affairs, post-market safety surveillance, adverse event reporting/medical device reporting, interaction with the FDA, and management of bacterial outbreaks related to the Olympus 180."  (Id. ¶¶ 15, 19.)  OCA is also organized under

the laws of the State of New York and has its principal place of business in Center Valley, Pennsylvania, at the same address as OAI.  (Id. ¶¶ 10, 13.)

In addition, Plaintiff sued OMSC, the company "responsible for the design, manufacture, assembly, packaging, and shipping of Olympus medical devices."  (Id. ¶ 17.)  OMSC is a Japanese company with its principal place of business in Tokyo, Japan.  (Id. ¶ 16.)

Finally, Plaintiff asserted claims against Custom Ultrasonics, Inc., the company that "designed, developed, manufactured, advertised, promoted, marketed, sold and/or distributed" the automated endoscope reprocesser ("AER"), a cleaning and sterilization device, that was used to clean the duodenoscope used on Mr. Warner.  (Id. ¶¶ 5, 21.)  Custom Ultrasonics is organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Ivyland, Pennsylvania.  (Id. ¶ 20.)

Count I asserts a products liability claim against the Olympus Defendants pursuant to North Carolina Gen. Stat. § 99B *et seq.*[2] and alleges that the Olympus Defendants' Olympus 180 duodenoscope was in a defective and unreasonably dangerous condition when it was placed in the stream of commerce.  Count II asserts a products liability claim against Custom Ultrasonics pursuant to the same statute, as Custom Ultrasonics's AER was allegedly in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce.  Count III asserts a negligence claim against the Olympus Defendants for allegedly breaching their duty to exercise reasonable care in the design and manufacture of the Olympus 180.  Count IV asserts a negligence claim against Custom Ultrasonics for the breach of the duty to exercise reasonable care in the design and manufacture of its AER.   Count V asserts an intentional

---

[2] Plaintiff alleges in the beginning of the Amended Complaint that she "is asserting claims for wrongful death and product liability under the law of [both] the Commonwealth of Pennsylvania and the State of North Carolina."  (Am. Compl. ¶ 1.)  However, in the specific counts, Plaintiff explicitly references North Carolina law.  (See Am. Compl. at 23, 26.)

misrepresentation/fraud claim against Olympus Defendants and alleges that, despite their duty to disclose important safety facts about the Olympus 180, the Olympus Defendants made false representations regarding the safety of their device.   Count VI asserts an intentional misrepresentation/fraud claim against Custom Ultrasonic for making false representations regarding the safety of its AER and the risks associated with using its AER to reprocess the Olympus 180.   Count VII asserts a negligent misrepresentation/fraud claim against Olympus Defendants, as they made false representations concerning the safety of the unapproved Olympus 180 design and the adequacy of its reprocessing protocol.   Count VIII asserts a negligent misrepresentation/fraud claim against Custom Ultrasonics, as it made false representations regarding the safety of its AER when used to reprocess the Olympus 180.   Count IX asserts a breach of implied warranty claim against Olympus Defendants, as they impliedly warranted that the Olympus 180 was fit for ordinary use and for the particular purposes for which it was intended and sold.   Count X asserts a breach of implied warranty claim against Custom Ultrasonics, as it impliedly warranted that its AER was fit for ordinary use and for the particular purpose for which it was sold.   Count XI asserts a breach of express warranty claim against Olympus Defendants, as they expressly warranted that the Olympus 180 was safe, effective, and fit for its intended use.   Count XII asserts a breach of express warranty claim against Custom Ultrasonics, as it expressly warranted that its AER was safe, effective, and fit for its intended use for reprocessing duodenoscopes.   Finally, Count XIII asserts a wrongful death claim against all Defendants.

OAI filed the instant Motion to Transfer this action to the Western District of North Carolina, where Plaintiff's husband underwent the ERCP with the allegedly defective device.   In the Motion, OAI states that Custom Ultrasonics does not oppose transfer.   (Mot. to Transfer ¶ 5.)

## II.    LEGAL STANDARD

OAI has moved to transfer this action pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Analysis of a request for transfer pursuant to § 1404(a) has two components.  First, venue must be proper in both the original venue and the requested venue.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995).  Second, because the purpose of allowing transfers pursuant to § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense," Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quotation omitted), the court is required to undertake a balancing test to decide whether "'the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'"  Jumara, 55 F.3d at 879 (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3847 (2d ed. 1986)).  A district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622).  The United Court of Appeals for the Third Circuit established a non-exhaustive list of pertinent public and private interest factors to be considered when balancing these considerations.  Jumara, 55 F.3d at 879-80.  The private factors include:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the
> defendant's preference; [3] whether the claim arose elsewhere; [4] the
> convenience of the parties as indicated by their relative physical and financial
> condition; [5] the convenience of the witnesses – but only to the extent that the
> witnesses may actually be unavailable for trial in one of the fora; and [6] the

location of books and records (similarly limited to the extent that the files could not be produced in the alterative forum).

Id. at 879 (citations omitted).  The public factors include:

[1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (citations omitted).   "The burden is on the moving party to establish that a balancing of proper interests weigh[s] in favor of the transfer, and unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail."  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (quotation omitted) (citation omitted).

## III.   DISCUSSION

Our first obligation under § 1404 is to determine whether this action could have been brought in the Western District of North Carolina, the proposed transferee district.   See 28 U.S.C. § 1404(a).  None of the parties argues that venue would not be appropriate in the Western District of North Carolina, and we therefore accept as undisputed that this action could have been brought in that district.

"Once it is determined that a case could have been brought in the proposed transferee district, a court must weigh a variety of private and public factors to determine whether the matter should be transferred under 28 U.S.C. § 1404(a)."  Swill Beverages, LLC v. U.S. Distilled Prods. Co., Civ. A. No. 15-5181, 2015 WL 9191470, at *1 (E.D. Pa. Dec. 17, 2015).  Transfer is appropriate when the balance of the private and public factors "tips decidedly in favor of trial in the foreign forum."  Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991) (citation omitted).

A.     Private Factors

1.     Plaintiff's Forum Preference

It is a "familiar maxim that in considering a transfer request, 'a plaintiff's choice of forum is entitled to great weight and is not to be disturbed unless the balance of convenience strongly favors the defendants' forum.'"  Copley v. Wyeth, Inc., Civ. A. No. 09-722, 2009 WL 2160640, at *2 (E.D. Pa. July 17, 2009) (quoting Blanning v. Tisch, 378 F. Supp. 1058, 1060 (E.D. Pa. 1974); and citing Jumara, 55 F.3d at 879).  However, a plaintiff's choice of forum is entitled to less weight where the plaintiff chooses a forum that is not her home forum.  Hamilton v. Nochimson, Civ. A. No. 09-2196, 2009 WL 2195138, at *3 (E.D. Pa. July 21, 2009) (citing Fellner v. Phila. Toboggan Coasters, Inc., Civ. A. No. 05-2052, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005)).

As noted above, in this case, Plaintiff is domiciled in the Western District of North Carolina but chose to bring suit in the Eastern District of Pennsylvania because OAI and OCA have their principal places of business here.  Accordingly, while recognizing that this factor weighs against transfer, we afford less deference to this factor than if Plaintiff had chosen her home forum.

2.     Defendants' Forum Preference

OAI actively seeks transfer, arguing that where the claims arose, convenience, and access to proof, among other factors, require such transfer.  Custom Ultrasonics does not oppose the requested transfer.[3]  Accordingly, this factor weighs in favor of transferring the action to the Western District of North Carolina, although Defendants' forum choice "is entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift

---

[3] OAI makes no representation regarding OCA's and OMSC's preferences.  However, it is likely that OCA and OMSC also favor transfer as they share counsel with OAI.

inconvenience from one party to another." <u>EVCO Tech. & Dev. Co. v. Precision Shooting Equip., Inc.</u>, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005) (citation omitted).

      3.    <u>Where the Claim Arose</u>

"Typically the most appropriate venue is where a majority of events giving rise to the claim arose." <u>In re Amkor Tech., Inc. Sec. Litig.</u>, Civ. A. No. 06-298, 2006 WL 3857488, at *5 (E.D. Pa. Dec. 28, 2006) (citing <u>Siegel v. Homestore, Inc.</u>, 255 F. Supp. 2d 451, 456 (E.D. Pa. 2003)). In products liability cases, "the state with the most significant contacts and relationship to the liability issue is [the plaintiff's] home state." <u>Kiker v. SmithKline Beecham Corp.</u>, Civ. A. No. 14-1445, 2014 WL 4948624, at *5 (E.D. Pa. Oct. 1, 2014) (alteration in original) (quotation omitted). Courts in this district have routinely applied this principle in products liability cases involving prescription drugs and medical devices. <u>See, e.g.</u>, <u>Copley</u>, 2009 WL 2160640, at *4 (transferring products liability case involving prescription drugs to district where plaintiff ingested drug); <u>McLaughlin v. GlaxoSmithKline, L.L.C.</u>, Civ. A. No. 12-3272, 2012 WL 4932016, at *4 (E.D. Pa. Oct. 17, 2012) (transferring prescription drug products liability action to plaintiff's home district because "[t]he 'operative facts' of a products liability action are deemed to occur where the allegedly defective product was used and injury occurred" (citations omitted)); <u>Sanders v. Ethicon, Inc.</u>, Civ. A. No. 14-7253, 2015 WL 1781572, at *2 (E.D. Pa. Apr. 16, 2015) (rejecting argument that products liability actions have "no single 'situs' of injury" and transferring products liability case involving a medical device to district where plaintiff resided and surgery occurred); <u>Lehr v. Stryker Corp.</u>, Civ. A. No. 09-2989, 2010 WL 3069633, at *4-5 (E.D. Pa. Aug. 4, 2010) (granting motion to transfer medical device products liability case because acts giving rise to the claim occurred in plaintiff's home district).

Plaintiff argues, however, that this factor is neutral because the claim arose not only in North Carolina, but also in Pennsylvania and Japan because that is where the Olympus Defendants and Custom Ultrasonics designed, manufactured, and marketed their products.[4] However, in Copley, a case involving ingestion of a prescription drug, the Court rejected the plaintiff's argument that transfer was inappropriate because "[a]ll of the facts relating to the development of disputed warnings" occurred in the plaintiff's chosen district, not the proposed transferee district.  Id., 2009 WL 2160640, at *4 (alteration in original) (quotation omitted).  The Court determined that such an argument "lacks merit" because "products liability cases typically arise in the plaintiff's home district."  Id.  Applying the same law to this case, we find that the claim arose in North Carolina, as that is where Mr. Warner underwent the operation using the duodenoscope and where the duodenoscope and AER allegedly caused Mr. Warner's infection and death.  Consequently, this factor weighs heavily in favor of transfer to the Western District of North Carolina.

4.    Convenience of Parties

Plaintiff resides in the Western District of North Carolina, the proposed transferee district.  "Plaintiff['s] convenience, despite Plaintiff['s] opposition to the motion, is better suited by transfer."  McCraw v. GlaxoSmithKline, Civ. A. No. 12-2119, 2014 WL 211343, at *5 (E.D. Pa. Jan. 17, 2014) (discussing convenience to the parties when defendants propose transfer to plaintiff's home district).  In addition, as Defendants are large corporations, they do not "bear a

---

[4] To support her claim that this factor is neutral, Plaintiff relies on Workman v. Johnson & Johnson, Janssen, L.P, Civ. A. No. 06-2523, 2007 WL 1850907 (D.N.J. June 26, 2007), a products liability case in which the court found that the location of the design, manufacture, marketing, and/or distribution of the product at issue bore the "closest connection to the alleged culpable conduct."  Id. at *4.  We decline to apply the reasoning in Workman, however, as the vast majority of cases in this circuit, and especially more recent cases in this district, have instead concluded that claims in products liability cases arise where the product was used.

meaningfully heavier financial burden in one district versus another." Guddeck v. SmithKline Beecham Corp., Civ. A. No. 13-3696, 2013 WL 4197085, at *2 (E.D. Pa. Aug. 14, 2013). Moreover, OIA is requesting the transfer, and Custom Ultrasonics does not oppose the Motion, even though such a transfer would likely be more inconvenient. Consequently, this factor weighs in favor of transfer.

> 5.     Convenience of Witnesses

The fifth private interest factor addresses the location of witnesses, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879 (citation omitted). "The convenience of party witnesses or witnesses employed by a party is given minimal weight in this analysis because parties are obligated to produce the attendance of themselves and their employees." Kiker, 2014 WL 4948624, at *7 (citing Snyder v. Bertucci's Rest. Corp., Civ. A. No. 12-5382, 2012 WL 6601384, at *3 (E.D. Pa. Dec. 18, 2012)). "Consequently, the convenience of key nonparty witnesses and, more importantly, the ability to compel them to testify in person at trial, is the main focus of this factor." Id.

In this case, the parties contest whether this factor weighs for or against transfer. OAI points to Plaintiff's mandatory disclosures and notes that fifteen of the seventeen listed fact witnesses reside in North Carolina. In addition, it notes that Plaintiff has indicated that employees of seven North Carolina corporate medical providers may also be witnesses. In contrast, Plaintiff has submitted affidavits from almost all of these witnesses confirming their willingness to travel to the Eastern District of Pennsylvania. Ultimately, the record reflects that almost all of the identified witnesses are either employed by the Defendants (thus legally obligating them to attend any court proceedings) or have submitted affidavits attesting to their willingness to travel. We therefore conclude that this factor is neutral.

6.      Location of Books and Records

As with the location of witnesses, this factor is "only relevant to the extent that the books and records could not be produced in the alternative forum."   Kiker, 2014 WL 4948624, at *9 (citing Jumara, 55 F.3d at 879).   Moreover, "'the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis.'"  Copley, 2009 WL 2160640, at *6 (quoting Lomanno v. Black, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003)).   Here, neither party has alleged that any records would be unavailable in either forum. Consequently, we consider this factor as neutral.  See id. ("Because the parties have produced no evidence to suggest that this factor should favor either transfer or denial of transfer, the Court grants it no weight.")

B.      Public Interest Factors

1.      Enforceability of Judgment

Neither party argues that a judgment in either the Eastern District of Pennsylvania or the Western District of North Carolina would be unenforceable.   Consequently, we do not give this factor any weight in our analysis.  See id. ("The parties did not present any argument in their papers regarding the enforceability of any judgment.   Accordingly, the Court will grant this factor no weight.")

2.      Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive

Although Plaintiff has submitted affidavits indicating that various potential witnesses would be willing to travel, this factor still counsels in favor of transfer because, "[b]ased on the location of most of the non-party witnesses and the non-corporate plaintiff[], it would be more convenient and less expensive to travel within" North Carolina than travel to Pennsylvania.

11

Sykes v. Glaxo-SmithKline, 484 F. Supp. 2d 289, 323 (E.D. Pa. 2007).  Furthermore, "this action has been before the Court for a relatively short period of time and, thus, 'a transfer will not significantly disrupt the litigation or result in a waste of judicial resources.'"  Coppola v. Ferrellgas, Inc., 250 F.R.D. 195, 200 (E.D. Pa. 2008) (quoting Zokaites v. Land-Cellular Corp., 424 F. Supp. 2d 824, 841 (W.D. Pa. 2006)).  Therefore, this factor weighs in favor of transfer.

In addition, OAI has indicated that the Olympus Defendants desire to implead the Carolinas Medical Center ("CMC"), the hospital where Mr. Warner had the relevant procedure. Indeed, OAI contends that "[i]mpleading Carolinas Medical Center is essential to OAI's defense" (OAI's Mot. at 12), because CMC "had an ultimate duty to properly clean the duodenoscope before it was used in Mr. Warner, but indisputably failed to do so."  (OAI's Reply Br. at 2.)  OAI also believes, however, that we do not have personal jurisdiction over CMC, and, thus, it maintains that impleader is not possible if the case remains here.

"The 'ability to implead a third party defendant in the proposed transferee forum is an important consideration favoring transfer of an action.'"  Bolles v. K Mart Corp., Civ. A. No. 01-1118, 2001 WL 767605, at *3 (E.D. Pa. July 9, 2001) (quoting Biggers v. Borden, Inc., 475 F. Supp. 333, 388 (E.D. Pa. 1979)).  That is because "[t]he interest of justice is served by the elimination of an unnecessary additional trial."  Lee v. Ohio Cas. Ins. Co., 445 F. Supp. 189, 192 (D. Del. 1978) (citations omitted).  Consequently, the demonstrated desire to implead a third party defendant also appears to weigh in favor of transfer.

3.    Court Congestion

Plaintiff notes that, despite the Western District of North Carolina having a lighter case load per judgeship than the Eastern District of Pennsylvania, cases this district are, on average,

resolved faster than in the Western District of North Carolina.  Therefore, we consider this factor as neutral.

### 4.    Local Interest in Deciding Controversies at Home

Plaintiff contends that this factor is neutral, as North Carolina has an interest in protecting its citizens and Pennsylvania has an interest in preventing its corporations from manufacturing defective products.  OAI, on the other hand, argues that North Carolina has the greater interest, and we agree.  "'When an action involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale.'"  McCraw, 2014 WL 211343, at *6 (quoting In re E. Dist. Repetitive Stress Injury Litig., 850 F. Supp. 188, 195 (E.D.N.Y. 1994)).  In particular, "states have a strong interest in ensuring that their residents are protected from out of state corporations," and this interest is particularly strong when those corporations provide medical care.  Id. (citing Zubyk v. LPBOC Hotel Ltd. P'ship, Civ. A. No. 00-971, 2000 WL 963168, at *11 (E.D. Pa. June 27, 2000); and Bond v. Laser Spine Inst., LLC, Civ. A. No. 10-1086, 2010 WL 3212480, at *14 (E.D. Pa. June 16, 2009)).  Moreover, "a state's interest in protecting its citizens from out-of-state corporations outweighs another state's interest in regulating corporations within its borders."  Kiker, 2014 WL 4948624, at *10 (citing Blain v. SmithKline Beecham Corp., 240 F.R.D. 179, 194 (E.D. Pa. 2007)).  Consequently, this factor favors transfer.

### 5.    Public Policies of the Fora

Neither party specifically addresses this factor.  Therefore, we consider this factor to be neutral.  See McCraw, 2014 WL 211343, at *7 (not considering this factor as neither party presented argument on this issue).\

6.      Familiarity of the Trial Judge with Applicable State Law

The final public factor considers the familiarity of the trial judge with the applicable law. Ordinarily, in a diversity action, a federal court applies the choice of law rules of the state in which it sits.  See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941).  If, however, a case is transferred under § 1404(a), "the transferee district court [is] obligated to apply the state law that would have been applied if there had been no change of venue" because a "change in venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."  Van Dusen, 376 U.S. at 639.  "This includes a state's choice of law provisions." McCraw, 2014 WL 211343, at *7.  Accordingly, Pennsylvania's choice of law rules will apply in either forum.

Pennsylvania resolves choice-of-law questions using a two-step process.  Blain, 240 F.R.D. at 192-93.  The first step is determining whether there is a real conflict.  Id.  When such a conflict exists, the second step is to determine "which state has the greater interest in applying its law."  Id. at 193.

Here, OAI notes that the Amended Complaint specifically asserts Plaintiff's products liability claims pursuant to North Carolina statutes, and it thus contends that North Carolina law would apply regardless of Pennsylvania's choice of law rules.  (See Am. Compl. at 23, 26.)  In addition, OAI notes that North Carolina's products liability laws are fairly unique, as it "is one of the only, if not the only, state which has not adopted strict liability in tort," and its laws are "founded upon very specific and express public policy unique to that state."  Barron v. Ford Motor Co. of Canada, Ltd., 694 F. Supp. 1337, 1341 (C.D. Ill. 1988); see also Glob. Ground Support, LLC v. Glazer Enters., Inc., Civ. A. No. 05-4373, 2006 WL 208639, at *10 (E.D. Pa.

Jan. 24, 2006) ("North Carolina courts have not adopted the doctrine of strict liability in products liability actions." (citation omitted)).

Without engaging in Pennsylvania's choice of law analysis for each claim in the Amended Complaint, we conclude that this factor weighs slightly in favor of transfer. Given the possibility that North Carolina's unique law will apply to the case, and because "[j]ustice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law," McLaughlin, 2012 WL 4932016, at *7 (alteration in original) (quotation omitted), North Carolina would be a better forum for this action. Should North Carolina law not apply, a court in that district is "more than capable" of applying another state's law. McCraw, 2014 WL 211343, at *7. Consequently, this factor indicates that transfer is appropriate.

C.      Weighing the Factors

Based on the factors discussed above, we conclude that the Western District of North Carolina is the most appropriate venue for this case. Although Plaintiff chose to bring suit in the Eastern District of Pennsylvania, and despite our recognition that Plaintiff's choice should be afforded some deference, many other factors weigh in favor of transfer. Most importantly, in cases involving prescription drugs and medical devices that were used outside of the forum, courts in this district have routinely granted transfer. See, e.g., Kiker, 2014 WL 4948624; McCraw, 2014 WL211343; McLaughlin, 2012 WL 4932016; Lehr, 2010 WL 3069633; and Copley, 2009 WL 2160640. Given this precedent and the balance of the factors, we conclude that the litigation would more conveniently proceed, and the interests of justice would be better served by transfer to the Western District of North Carolina.

**IV.    CONCLUSION**

For the foregoing reasons, we grant OAI's Motion to Transfer this action pursuant to 28 U.S.C. § 1404(a).  This action shall be transferred to the Western District of North Carolina for further proceedings.  An appropriate order follows.

BY THE COURT:

/s/John R. Padova
_____
John R. Padova, J.